COOLEY ET AL. *v.* TULLAS ET AL.

[76 South. 264, Division A.]

1. LOGS AND LOGGING. *Liens for labor. Statute.*

Under chapter 131, Laws 1908, employees of a sawmill have con-current liens on their employer's lumber, which may be en-forced as to all of them in one suit in chancery.

2. APPEAL AND ERROR. *Reversal. Form of action.*

Under Constitution 1890, section 147, so providing, where the cir-cuit court assumes jurisdiction of a cause of action to enforce the lien of employees of a sawmill against their employer's lumber under Laws 1908, chapter 131, and proceeds to judg-ment, it will not be disturbed on the ground that the action should have been brought in the chancery court.

APPEAL from the circuit court of Smith county.

HON. W. H. HUGHES, Judge.

Suit by J. S. Tullas and others against J. Cooley and others. From a judgment for plaintiffs, defendants ap-peal.

Appellees were employed as laborers at the sawmill of appellants, and were engaged in the manufacture of lumber. They brought a joint suit in the court of a justice of the peace for wages due them for several months, aggregating one hundred, forty-nine dollars and fifty-five cents and sued out a writ of seizure, which was levied upon certain lumber of the appellants; the pro-ceedings being had under the provisions of chapter 131, Laws of 1908, which provides as follows:

"Section 1. That every employee or laborer of a per-son, partnership, or a corporation engaged in operating a sawmill, planing mill, or in cutting and shipping (or rafting) timber shall have a lien on all such timber of his employer, for his wages due by such employer, in preference to all other debts due and owing from the owner thereof. But such lien shall take effect as to pur-

chasers or incumbrances for a valuable consideration, without notice thereof, only from the time of commencing suit to enforce the lien.

"Sec. 2. That the lien herein provided may be enforced and trial and judgment had in the same manner as the lien for purchase money is enforced under the provisions of the chapter on lien for purchase money of goods.

"Sec. 3. That the lien hereby created shall expire three months after the claim is due unless judicial proceedings have commenced to assert it."

Section 3080 of the Code of 1906 is as follows:

"Any seller of personal property, or his assigns, who shall be about to begin suit for the purchase money thereof, may file with his declaration or evidence of debt an affidavit designating the property sought to be subjected and averring therein the liability of the property, in whole or part, for the debt sued on; whereupon the clerk of the court, or justice of the peace in cases before him, shall issue a writ of summons and seizure commanding the officer to seize the property and deal with it as in the case of an attachment for debt, and to summon the defendant as in other cases. The defendant may replevy the property as in case of attachment against debtors."

There was a judgment for the plaintiffs below for the amount sued for, and the defendant's appeal, contending that there was a misjoinder of parties, inasmuch as each of the appellees had a separate cause of action against the appellants.

*A. M. Edwards,* for appellants.

At the trial of this cause in the circuit court the defendants made a motion there to dismiss the case for the reason that there was a misjoinder of plaintiffs in the case; and this is one of the assignments of error, which we insist is well taken.

If appellants were due these several plaintiffs, or appellees each, certain sums of money for labor done at appellants' mill, then each one of these plaintiffs had a separate and distinct cause of action against appellants, and their causes of action could not be joined in a suit like this.

Chapter 131 of the Laws of 1908, under which plaintiffs were proceeding when they instituted this suit, and seized the said lumber, reads as follows:

Section 1. Be it enacted by the legislature of the state of Mississippi, that every employee or laborer of a person, partnership, or corporation engaged in operating a sawmill, planing mill, or in cutting and shipping (or rafting) timber, shall have a lien on all such lumber and timber of his employer, for his wages due by such employer, in preference to all other debts due and owing from the owner thereof. But such lien shall take effect as to purchasers or incumbrances for a valuable consideration, without notice thereof, only from the time of commencing suit to enforce the lien.

How same may be enforced and judgment had.

Sec. 2. That the lien herein provided may be enforced and trial and judgment had in the same manner as the lien for purchase money is enforced under the provision of the chapter on lien for purchase money of goods.

Sec. 3. That the lien hereby created shall expire three months after the claim is due unless judicial proceedings have commenced to assert it.

Sec. 4. That this act, shall take effect and be in force from and after its passage. Approved March 20, 1908.

Sec. 3080 of the Code of 1906, reads as follows: "Proceeding to enforce any seller of personal property, or his assigns, who shall be about to begin suit for the purchase money thereof, may file with his declaration or evidence of debt an affidavit designating the property sought to be subjected and averring therein the liability of the property, in whole or in part for the debt sued on;

whereupon the clerk of the court, or the justice of the peace in cases before him, shall issue a writ of summons and seizure, commanding the officer to seize the property and deal with it as in the case of an attachment for debt, and to summon the defendant as in other cases. The defendant may replevy the property as in case of attachment against debtors."

The legislature by the above act referred to has given laborers at sawmills a lien on the lumber manufactured for his wages, and also has said how this lien shall be enforced and this procedure must be followed, otherwise the procedure will be void.

In the case at bar the plaintiffs have no community of interest, but that their rights are separate, there can be no doubt; any one of these plaintiffs could have sued and recovered against these defendants without prejudicing the action of the other.

There might have been set-offs and counterclaims and recoupments affecting in the least the other plaintiffs. If these plaintiffs can all join in their actions against the defendants in the case at bar, then four plaintiffs or fifty or more persons might sell a cow apiece to a drover, and on his failing to pay for the cows, institute suit as pointed out by statute, seize the cows and all join in the same suit because they all have a purchase money lien on the cows while they are in the hands of the first purchaser. This under our statute cannot be done, but on the other hand each and every party would have to institute a separate suit for the reason there is no community of interest, the fact alone that they all have a lien on the cows for the purchase money is not at all sufficient. But it is essential that the parties to the suit have a community of interest both in the subject of action and the relief demanded before they can join in the same suit.

There is no statute in this state which authorizes the joinder of plaintiffs in suits like the one at bar; neither does the common law permit of such.

The rule governing the joinder of plaintiffs in a common law action turned on the distinction between joint and several interest. Whether the action arose from a contract or from a tort, if defendant was legally answerable to two or more jointly they should all, at common law, join as plaintiffs in the action, unless a valid excuse for the non-joinder appears, on the face of the pleading. The interest being joint, existed an entirety; and one person ought not to be allowed to sue alone for the whole of that of which he is entitled to only a part. The right of action was collectively, and only so; no agreement in the premises enabled them to sue separately. On the other hand, when the interests were several, there could as a rule be no joinder, even when the rights of all the plaintiffs had been violated by one and the same wrongful act on the part of defendant, or had arisen *ex contractu* out of one and the same transaction with defendant. See 30 Cyc., p. 106; *Barry* v. *Rogers,* 2 Bibb. (Ky.) 314; *Hinchman* v. *Patters Horse R. Co.,* 17 N. J. 975; 15 Encyclopedia of Pleading and Practice, p. 540.

We most respectfully submit that the case should be reversed and remanded.

*T. J. Wills,* for appellee.

The objection urged by appellants in the court below, and the question presented here for determination is whether appellees could enforce their lien against the lumber jointly or are they required, under the law, to proceed by separate attachments on the same property.

It will be observed that chapter 131 of the Acts of 1908 was not enacted primarly for the purpose of affording a method of accounting as between an employer and employee engaged in the sawmill business, but has for its purpose the imposing of a lien upon the product of the labor for the payment of the wages due him. The accounting and determination of the amount due the

employee by the employer is incidental to, and subordinate to the remedy given by the law. The law itself designates that a lien shall be enforced and trial and judgment had in the same manner as the lien for purchase money is enforced.

The chapter on liens for the purchase money of goods, chapter 83 of the Code makes no provisions for proceedings where there are other parties with liens of equal priority and character on the same goods. In fact, it is impossible for several liens of the same priority and character to exist on the same property for purchase money. Since ownership of goods is single, even though there may be more than one interested party owing as tenants in common. If we are to look to the Code for the procedure, therefore, in cases like the one under consideration, we find in sections 3062 and 3063 of the Code of 1906, the method to be pursued and the parties to be named in suit similar to the one at bar. Section 3063 provides that "all persons having an interest in the controversy and all persons claimng liens on the same property . . . shall be made partes to the suit."

It is our contention that this section controls in all suits of this character. That all parties having a like lien upon the property must be made parties to the proceedings to enforce the lien against the property. There are two reasons why such a proceeding is necessary:

First: If the outstanding indebtedness subjecting the property to a lien was twice the amount of the value of the property, and the parties entitled to the lien should all attempt to enforce their rights in separate suits, there would be no way of making a distribution of the proceeds of the property among the several claimants, and the first half of the number so fortunate as to have their cases heard, would have their claims discharged in full leaving the remaining claimants without remedy. An equal distribution could only be had by all the claimants having their claims adjudicated in one suit.

Second: Since the suit is primarily one to enforce a lien against the lumber for labor, if separate attachment suits were brought by each and every one of the claimants the defendants would be entitled, under the authority of the rule of law laid down by this court, in the line of decisions beginning with *Tribett* v. *I. C. Railroad Co.*, 12 So. 32, and culminating with the leading case of *Cumberland Telephone & Telegraph Co.* v. *Williamson*, 57 So. 559, to enjoin the prosecuton of the separate suits and have the rights of all the parties determined in one suit. If the defendant could require plaintiffs to adjudicated their rights in one suit, then plaintiffs have a right to have their lien enforced, and their debts collected in one or a joint suit. The right of the plaintiff being enforceable in a joint suit, section 3063 affords the remedy to be pursued.

HOLDEN, J., delivered the opinion of the court.

Under chapter 131, Laws 1908, plaintiffs below had a concurrent statutory lien upon the property seized, which could and should have been enforced in the chancery court. The statute makes no provision for the enforcement of the lien where there are several persons with liens of equal strength upon the same property; but the chancery court had jurisdiction to enforce the lien as to all of the three plaintiffs against the property in one suit, and the circuit court having assumed jurisdiction of the cause, and proceeded to judgment, we will not disturb the judgment, in view of section 147 of the state Constitution.

We find no reversible error in the record.

*Affirmed.*